## GEORGE LOCHNAR *vs.* THE STATE OF MARY-LAND.

*Intoxicating Liquor—Servant of Seller Liable to Indictment for Violation of License Law—Place of Delivery of Liquor to Purchaser is the Place of Sale.*

A clerk or servant who sells liquor for his employer is liable to indictment for a violation of the liquor license law if the employer was not licensed to sell.

When the seller of intoxicating liquors delivers them in person or by his agent to the purchaser, without the intervention of a common carrier, the place of delivery is the place of sale, and it makes no difference that the agreement to sell was made elsewhere.

Defendant, a licensed liquor seller in Baltimore City, accepted an order there for half a dozen bottles of beer to be delivered to the purchaser in Baltimore County; separated the same from his stock in the city and delivered them in Baltimore County. Defendant was not licensed to sell liquor in the county. *Held*, that the possession and control of the beer remained in the defendant until actual delivery; that the sale was made in the county, and was in violation of the liquor license law of the county.

*Decided January 12th,_1910.*

Appeal from the Circuit Court for Baltimore County.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE and THOMAS, JJ.

*David Ash* (with whom was *W. H. Lawrence,* on the brief), for the appellant.

*Isaac Lobe Straus, Attorney-General,* and *Walter D. Eiseman,* for the appellee.

BURKE, J., delivered the opinion of the Court.

The Act of 1908, Chapter 179 of the Public Local Laws for Baltimore County, provides that, after its passage no person shall sell, offer for sale, or keep for sale in Baltimore County any intoxicating liquor of any kind without having obtained a license therefor as provided in the Act. It is also provided by Chapter 174 of the Acts of 1908 relating to Baltimore County that no license shall be issued for the sale of spirituous or fermented liquors or lager beer within the town of Sparrows Point, or at any place in Baltimore County within three miles distance from the schoolhouse in Sparrows Point.

The Act of 1908, Chapter 179, contains careful and well-considered restrictions concerning the sale of liquors in Baltimore County. It is a police regulation, and its object is to conserve the public morals and public order by forbidding the unregulated and indiscriminate sale of spirituous and fermented liquors in that county. The public welfare demanded proper legislation upon the subject, and the Legislature was acting within its well-recognized powers in passing the Acts mentioned. It was said in *Trageser* v. *Gray*, 73 Md. 250, that "their power over the whole subject under the Constitution of this State cannot at this day be questioned. They may prohibit the sale of spirituous liquor entirely if they see fit to do so, or they may restrict it in any manner which their discretion may dictate. No one can claim as a right the power to sell, either at any time, or at any place or in any quantity. If he is allowed to sell under any circumstances, it is simply by the free permission of the Legislature, and on such terms as it sees fit to impose."

George Lochnar, the appellant on this record, was indicted in the Circuit Court for Baltimore County for selling liquor without a license. The indictment contained two counts. The first count charged him with selling beer to Eliza Smith at Baltimore County on the 11th day of March, 1909, without first having taken out a license therefor, as provided by law; and the second count charged that, at the

same time and place, he sold whiskey without a license to Eliza Smith. He pleaded *non cul.* and a special plea, in which he alleged that he is a servant and employee of one William Schuette, a holder of a retail liquor license issued by the Clerk of the Court of Common Pleas of Baltimore City, to sell liquors by retail, and that that license was in force on the date charged in the indictment; that on the 5th day of March, 1909, Eliza Smith ordered of the traverser one-half dozen bottles of beer to be delivered to the said Eliza Emith on the 11th day of March, 1909, the date mentioned in the indictment; that the said order was received by William Schuette, the licensee and employer of the traverser at his place of business, designated in his license in Baltimore City, and was accepted by the said Schuette, at his place of business, and that the order, to wit, one-half dozen bottles of beer, was segregated and separated from the stock of the said Schuette, the licensee, from his regular place of business in Baltimore City, as designated in his license, as ordered by the said Eliza Smith; and that the beer was delivered to her at Sparrows Point, Baltimore County, by the traverser from the stock and trade of the said licensee, William Schuette, in Baltimore City, as designated in the license. The State demurred to this plea, and the Court sustained the demurrer. The case was tried by a jury upon the issue joined upon the plea of not guilty, and the traverser was convicted and sentenced to pay a fine of three hundred dollars and costs. From this judgment he has appealed.

Assuming that the sale was made in Baltimore County as charged, it is no defense that the appellant was a servant or employee of William Schuette, who was a licensed retail liquor dealer in Baltimore City. It is not necessary that the traverser should have been the owner of the beer in order to constitute the defense of selling it without a license. "If a person not owning it has the authority to sell it, in other words, if he acts as clerk or servant to the owner, this fact does not excuse him but he is equally guilty as though he

proceeded on his own motion and for his own profit; because no man can authorize another to violate the law." *Bishop'*. *Statutory Crimes* (Ed. 1873), sec. 1024; 23 *Cyc.* 206 ; *Black on Intoxicating Liquors*, sec. 372.

Upon the facts stated in the plea we hold that the sale of beer was made in Baltimore County in violation of the stat- utes. Those facts show that Eliza Smith on the 5th day of March, 1909, ordered from the traverser, as the servant or agent of a retail dealer in Baltimore City one-half dozen bot- tles of beer; that the order was received and accepted by his employer at his place of business in Baltimore City; and that the beer ordered was segregated and separated from the stock of his employer, and delivered by his servant, the appellant, to Eliza Smith at Sparrows Point in Baltimore County. It would open wide the door to the unrestricted and indiscrimi- nate distribution of spirituous and fermented liquors in Bal- timore County to hold that such facts constitute no offense. It would frustrate the very object the Legislature had in view, and would in a very large measure withdraw this traffic from the regulation and control of the local authorities. We think it is a palpable attempt to evade the liquor laws of the county. If such a scheme can be worked with immunity from punishment by a liquor dealer in Baltimore City the same thing can be done by a liquor dealer in Batimore County in the city where the license fee is much higher, and we would have the anomolous situation of a liquor dealer in Bal- timore County sending his agents into Baltimore City solicit- ing orders, accepting the orders, segregating the goods ordered from the stock, delivering them by his *own servant* in the city, and successfully contending, when indicted for an illegal sale, that upon these facts the sale was made in Baltimore County. It would seem that the mere statement of the facts show the unsoundness of the proposition.

The rule contended for by the State that where the seller of intoxicating liquors delivers them in person, or by his agent to the purchaser, without the intervention of a common carrier, the place of delivery is the place of sale, is abundantly

supported by the authorities, and is the rule which should be applied under the circumstances of this case.

In 17 *Am. & Eng. Cyc. of Law,* 301, it is stated that, "if the seller of intoxicating liquors in person or by his agent delivers the goods to the purchaser and receives the price therefor at the latter's place of business, without the intervention of a common carrier, the place of delivery is the place of sale, and it is of no importance where the order for the liquor was given or the agreement to sell was made. While the goods are in the hands of the seller or his agent the contract is executory, and either party may impose conditions, or recede from it. This rule has been applied in prosecutions for violation of local option laws, in prosecutions for sales in territory not covered by the seller's license, and in prosecutions of a foreign dealer for sales in a prohibition State."

In support of the proposition stated in the text the author cites many cases, among which are the cases of *State* v. *Houts,* 30 Mo. App. 265; and *Commonwealth* v. *Greenfield,* 121 Mass. 40, which are particularly applicable to this case. There may be special facts in a particular case which would take it out of this general rule; but no such facts appear in the appellant's special plea. In *State* v. *Houts, supra,* the Court said: "Where a law has received the sanction of the law making power of the State, it is the duty of the Court to so construe it, as to carry out, as far as practicable the intention of the Legislature in enacting the law, and not by refinements and technical interpretation, to practically nullify it. The defendant was the agent of a Brewery Company, and engaged in selling its beer, and if a proper interpretation of the statutes would permit him to deliver and receive pay for beer in Scott County, when sold on orders given or received outside of Scott County, then it is apparent to all, that Brewery Companies and wholesale liquor dealers could carry on extensive traffic in counties where the local option law has been adopted, and do so without any legal restraint or restrictions whatever."

In *Greenfield's Case, supra,* the facts were these: "The defendant was doing business in Pittsfield in the bottling and sale of lager beer and cider, under a license to sell liquors in Pittsfield only. On June 30, 1876, the defendant received the following order from Lee, by letter: "Lee, June 29, 1876. Mr. Greenfield. Dear Sir: Bring me down 20 dozen bottles of lager and come as soon as you can, as I am all out. Yours, etc., W. C. Winegar." In pursuance of this order, the defendant, on July 1, 1876, drew into bottles from the large casks in which the lager came to him from the manufacturers enough lager to fill the order, and set apart the bottles so filled to take to Winegar, which he afterwards placed into his wagon for Winegar, carried them to him that day at Lee, left them there with him, and subsequently received his pay therefor from Winegar. Upon these facts the defendant requested the Judge of the lower Court to rule that he was entitled to a verdict of acquittal, but the Judge refused, and instructed the jury to bring in a verdict of guilty which they did. GRAY, C. J., sustaining the action of the lower Court, said: "Assuming (as most favorable to the defendant, but without deciding) that the order of the purchaser would have justified the defendant in setting apart the goods at Pittsfield, with the purpose and effect of passing the title in them to the purchaser, it certainly did not require him to do so, and the evidence stated in the bill of exceptions, to say the least, warranted the inference that the defendant entertained no such purpose, and did not intend to part with the title until he actually delivered the goods at Lee, according to the terms of the order. If such were the facts, the goods, while in the wagon of the seller, remained his property, and at his risk, and the sale was completed at Lee, and not at Pittsfield." The appellant has urged that, upon the doctrine of appropriation, the title to the beer passed to Eliza Smith in the City of Baltimore, and that therefore, the sale for which he was indicted and convicted was made and completed in the city. That doctrine was thus stated by JUSTICE PARKE. 5 *B. & Ad.* 313: "Where there is a sale of goods generally, no

property in them passes until delivery, because until then the very goods sold are not ascertained; but, when, by the contract itself, the vendor appropriates to the vendee a specific chattel, and the latter thereby agrees to take that specific chattel, and to pay the stipulated price, the parties are then in the same situation as they would be after delivery of goods in pursuance of a general contract. The very appropriation of a chattel is equivalent to delivery by the vendor, and the assent of the vendee to take the specific chattel, and to pay the price is equivalent to his accepting possession. The effect of the contract, therefore, is to vest the property in the bargainee."

This Court in *Hopkins v. Cowen,* 90 Md. 162, in discussing this doctrine, said: "Accordingly, it is held that where a buyer purchases a specific quantity of goods to be shipped to him from a distant place, and the seller segre· gates and appropriates to the contract the specific quantity by delivering them to a carrier, the law presumes that to be equivalent tto delivery to the vendee (16 Md. 412); in such case the goods become the property of the vendee, although they are to be paid for on arrival (*Farmers' Phos. Co.* v. *Gill,* 69 Md. 545), the carrier being regarded as the agent of the vendee to receive it. But if the vendor undertakes to make delivery himself at a distant place, the carrier becomes the agent of the vendor, and the property will not pass until delivery is made. In both such cases the inference arising from the facts stated may be rebutted by other circumstances, which tend to show what the intention of the parties really was."

We think it quite obvious upon the facts stated in the plea that there was no appropriation of the goods to the contract within the principle stated. Schuette merely selected the goods from his stock in trade preparatory to delivery by his agent to Eliza Smith, and retained the possession and control of the beer until it was delivered to her in Baltimore County. It is evident that he did not intend to part with

the title to the goods until they were delivered to her in the county.

There was no error in sustaining the demurrer of the State to this plea, and the judgment will be affirmed.

*Judgment affirmed with costs.*