## MORITZ BENESCH

### *vs.*

## STATE OF MARYLAND.

## ANTON VANURA and LIZZIE VANURA

### *vs.*

## STATE OF MARYLAND.

*Constitutional law : title and subject of statutes.  Liquor laws :
regulating sale of—.  Sunday assemblies : rent property
for—; where liquor to be drunk, made unlawful.
Chapter 31 of Acts of 1916.  Indictments.*

The constitutional requirement (Article 3, section 29) that
the title of an Act shall embody the subject of the Act, does not
require that all the means shall be set out by which the legisla-
tive intention is sought to be accomplished; it is not essential to
embody a bill of particulars in the title.            pp. 510, 513

The fact that while the title of an Act declares it to be for the
regulation of the sale, and licensing of the sale, of spirituous
liquors, etc., does not render unconstitutional a law which
makes it a penal offense for owners of certain resorts to rent
them for entertainments or assemblies on the Sabbath Day,
where liquor, etc., is drunk or to be drunk.           pp. 511-512

The provisions in section 9F of Chapter 31 of the Acts of
1916, making it a penal offense for the owners of certain re-
sorts in Baltimore County to rent them for Sunday entertain-
ments or assemblies, where liquor is drunk, or to be drunk, are
within the police powers of the State.                   p. 516

In an indictment under this section of the Act, it is not neces-
sary to state the exact location of the resort, nor to set out the

names of the persons by whom the liquor was drunk or was to be drunk. 　　　　　　　　　　　　　　pp. 517-518

But the indictment should state the party or parties to whom the property was rented, or state, if such was the fact, that it was rented to parties unknown. 　　　　　　　　pp. 519-520·

In general, when an offense is created by statute, an indictment for it will hold if it states the offense in the language of the statute. 　　　　　　　　　　　　　　　　p. 518·

*Decided December 13th, 1916.*

Two appeals from the Circuit Court for Baltimore County. (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The causes were argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Wm. P. Cole, Jr.,* for Moritz Benesch and Anton and Lizzie Vanura.

*Isaac Lobe Straus* (with whom were *Albert C. Ritchie, Attorney General, George Hartman, State's Attorney for Baltimore County,* and *Clinton McSherry* on the brief), for the State of Maryland.

BOYD, C. J., delivered the opinion of the Court.

The appeals of *Anton Vanura and Lizzie Vanura* v. *State* and *Moritz Benesch* v. *State* were heard together. In each case a demurrer to the indictment was overruled, a plea of not guilty was entered and a verdict of guilty was found by the Court, by whom the traversers elected to be tried. The only questions before us are presented by the demurrers to the indictments, and as the parties were indicted under the same section of the statute (section 9F of Chapter 31 of the Acts of 1916), the two cases will be disposed of by one opinion.

Those made liable to prosecution and punishment by section 9F can properly be divided into three clases, and for

convenience we will insert the letters (a) and (b) before the two clauses involved in these appeals, although they are not in the statute. They are as follows:

"9F. (*a*) Any person, or any officer or member of any corporation, association or club owning, leasing, renting or occupying any park, ground or shore in Baltimore County who shall lease, rent or hire out the same for a picnic, crab feast, shad bake, barbecue, oyster roast or feast, or other entertainment or assemblage to be held on the Sabbath or Lord's Day, commonly called Sunday, and at which any spirituous, fermented or intoxicating liquor of any kind, or lager beer or near-beer, are drunk or to be drunk on said Sabbath Day;

"(*b*) or any person, or any officer or member of any corporation, association or club, who shall give, hold, conduct or take part in any picnic, crab feast, shad bake, barbecue, oyster roast or feast, or other entertainment or assemblage on the Lord's Day, commonly called Sunday, at which spirituous, fermented or intoxicating liquor of any kind or lager beer or near-beer are drunk or to be drunk on the Lord's Day, commonly called Sunday, * * * shall be guilty of a misdemeanor and upon conviction thereof shall pay a fine of not less than $200.00 nor more than $1,000.00 or be imprisoned in jail or in the House of Correction of Maryland for not less than 30 days, or suffer both fine and imprisonment, as aforesaid, in the discretion of the Court."

The grounds for the demurrer relied on are stated in the briefs for the appellants to be: 1st. That section 9F is unconstitutional and void in that the title of the Act is defective—section 9F not being germane thereto; 2nd. That the section is unconstitutional and void because it has no real or substantial relation to the police power of the State, being a plain invasion of rights secured by the fundamental law and being oppressive and discriminating and obnoxious to

the 14th Amendment of the Federal Constitution; and, 3rd. That the indictment does not properly embrace the language of the statute in that it is not specific and does not apprise the traversers properly of the crime with which they are sought to be charged.

We will consider them in that order. First: The title to the Act is as follows: "An Act to repeal and re-enact with amendments Sections 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 17, 21 and 26 of Chapter 179 of the Acts of the General Assembly of Maryland of 1908, entitled 'An Act to regulate the sale and the granting of licenses for the sale of spirituous and fermented liquors in Baltimore County,' and to add eight new and additional sections to said Chapter 179," etc.—Section 9F being one of the eight added.

The Act of 1908, referred to in the above title, contained 29 sections. The title to that Act is correctly quoted in that of the Act of 1916, and it is contended that the latter is not a sufficient compliance with the requirement of Section 29 of Article 3 of the Constitution, in so far as Section 9F is concerned. It could not be successfully contended, in view of the decisions of this Court, that such a title as that of the Act of 1908, would not be sufficient to sustain a prohibition against selling or giving away liquor on Sunday, and to provide penalties for its violation. It would clearly be a compliance with the Constitution, as construed in former cases of this Court, when it purports "to regulate the sale and the granting of licenses for the sale of spirituous and fermented liquors." The experience of those connected with the administration of the law, as well as the many decisions of this and other Courts, has taught them that there are many attempts to evade the laws regulating the sale of liquors. If, then, it be found that the ordinary prohibition against selling or giving away liquor on Sunday is not sufficient to correct the evil sought to be corrected, and that other provisions are necessary, in order to accomplish the object of such laws, it can not properly be said that such provisions are not germane.

No one would now question the validity of a statute having a title such as that of the Act of 1908, because in the body of the Act screens, curtains and other obstructions were required to be removed on Sundays and other days on which sales are prohibited, and it was provided that sales at times which are permitted can only be made in some room fronting on a street or public highway. The object of such provisions is to aid in the enforcement of the laws prohibiting sales and the disposition of liquor on Sundays and at other prohibited times.

It is common knowledge that the excessive use of intoxicating liquors, especially where many persons are gathered together, is liable to produce disorder, rioting and disturbance of the public peace. Under such conditions the place is likely to become a public nuisance. If it had been found that in Baltimore County, which adjoins a large city, the provisions of the local liquor laws were inadequate to prevent disorder, and insure the enforcement of the law, and that such provisions as those in Section 9F were necessary for that purpose, then they are germane to the subject of the Act.

It will be well to recall some of our decisions, which illustrate the construction of this constitutional provision by us and our predecessors, when statutes concerning the sale, etc., of liquor were involved. In the familiar case of *Parkinson* v. *State,* 14 Md. 184, Chapter 55 of the Acts of 1858 was under consideration. The title was, "An Act to prohibit the sale of intoxicating liquors in the City of Annapolis, or within five miles thereof, to minors and people of color," and by the first section of the Act it was provided that "it shall not be lawful for any person or persons, whether licensed to sell spirituous liquors or not, to sell, dispose of, barter, or give within" the prescribed limits any spirituous or fermented liquors to a minor, without the written order of his parents or guardian. Parkinson was indicted for *giving* liquor to a minor. In discussing the constitutional provision then in force, that "every law enacted by the Legislature shall em-

brace but one subject, and that shall be described in the title"—being the same as section 29 of Article 3 of the present Constitution—the Court said: "What is the *subject* of a penal law may generally be perceived by ascertaining what mischief or evil the law was designed to remedy or to prevent. And if this be true, there is no difficulty in knowing what is the subject 'embraced' in the Act under consideration. The plain and obvious meaning of its language clearly manifests an intention to prohibit or restrain minors and people of color from obtaining intoxicating liquor in the City of Annapolis, or within five miles thereof. Prohibiting the *sale* of it to them is only *one* of the *means* by which the chief intention of the Legislature was to be accomplished. Employing other means, designed to effect the same purpose, can not be properly considered the introduction of another or different subject, within the meaning of the constitutional restriction. If it were so, no law providing several modes for effecting its main purpose would be valid in all its provisions." Again, it is there said: "Looking then to all parts of this Act, we consider it evident that the Legislature intended to prohibit the classes of persons named from obtaining intoxicating liquor, and that this is the *one subject* of the law. Making it unlawful 'to sell, dispose of, barter or give' the liquor and imposing a penalty upon persons who should do so, without the written order or certificate required, were but the *means* provided for effecting the chief design."

In *Baltimore City* v. *Flack,* 104 Md. 107, CHIEF JUDGE McSHERRY considered this constitutional provision at length, and on page 116 in speaking of *Parkinson* v. *State, supra,* said: "Wherein the distinction was pointed out between *subject* of a penal enactment—which must be stated in the title —and the *means* by which the legislative intention was to be accomplished—which need *not* be described in the title," and again, "The contention was that as the title was restricted to the *sale* of liquors the provision in the body of the statute prohibiting the giving of liquors was not included in the title

and was therefore void. But the Court held that it was the manifest intention of the legislation to prohibit or restrain minors and people of color from obtaining intoxicating liquors —that was the *subject* of the law."

In *Cearfoss* v. *State,* 42 Md. 403, the title of the Act was: "An Act prohibiting the sale of spirituous or fermented liquors, in the several counties of the State on the day of elections." The Act forbade liquor dealers and others, directly or indirectly, "to sell, barter or give, or dispose of any spirituous or fermented liquors, ale or beer, or intoxicating drinks of any kind" on election days. The traverser was indicted for giving whiskey on election day and he plead "that in his own house he was visited by some friends, who, in the course of hospitality, partook of some whiskey which he had there for his own use," but the Court sustained a demurrer to the plea, and the traverser was found guilty. The Court said: "According to the express terms of this law, and the policy the Legislature seemed to have in view, there is no escape from the conclusion that this case is within the letter and mischief of the law, and which can not be avoided by the Courts, without a refusal to enforce its provisions." In *Parker* v. *State,* 99 Md. 189, it was said by JUDGE FOWLER, in speaking for the Court: "It is conceded the Legislature has the right not only to forbid the sale, but the manufacture of liquor, but such an exercise of the power to prohibit the sale would practically be nugatory unless accompanied by the power to prohibit giving it away, for the reason that it would be impossible in many cases to prove a sale if a gift be allowed." In *Mitchell* v. *State,* 115 Md. 360, the title provided for submitting to the voters of Worcester County the question whether liquor should be sold and provided for penalties, but section 2 of the Act made it unlawful in addition to the sale "to give away," "otherwise dispose of," "to take orders for," and "to operate as distributing or collecting agents for" any liquor. The objection that the statute was unconstitutional on account of those provisons

was said by JUDGE BRISCOE to be "obviously not tenable upon authority."

It would oftentimes be impossible to prove sales at picnics and other entertainments mentioned in the statute, and the Legislature realizing the necessity for preventing the *use* on such occasions enacted section 9F. There is no reason why owners or holders of such properties should be permitted to rent them, if the use of them in the way prohibited is liable to result injuriously to the peace and quiet of the community on Sunday. Perhaps the best way to prevent it was to do what that section does—prohibit the renting, etc., for picnics, etc., where liquor was to be drunk. If the owner acted in good faith and had no reason to believe that liquor was to be drunk, and it was done without his knowledge or connivance of any kind, then a different question would arise. but in the indictment against the Vanuras they were charged with leasing, renting and hiring out a certain park, ground and shore for a picnic, etc., to be held on Sunday, at which beer "was then and there drunk and was then and there to be drunk on said Sabbath Day," and in the indictment against Benesch it was alleged that he did hold, conduct, give and take part in a certain picnic on Sunday at which beer was drunk and was to be drunk.

It must not be forgotten that this section is a part of the Local Liquor Laws for Baltimore County, and its provisions were intended to aid the regulation of not only the *sale* of liquor, but of its *use and obtention* at prohibited times and places. The statute was doubtless intended to reach, amongst other things, the sale of liquor without license, and it is apparent that it would be very difficult at such gatherings as those referred to in this section, to prevent evasions of the law by those who are not licensed, and licensees were prohibited from selling or giving away liquor on Sunday, under the law in force when the statute was passed. If conditions were such from the use of intoxicating liquors on Sunday in that county, as to require legislation of this character, we

can see no reason why it should not be included in this Act, which was known as the Liquor Law for the County. It can be properly inferred from the provisions of this section that such conditions did exist. Regulations of law in reference to intoxicating liquors would naturally be expected to be found in it. In legislating on such a subject it would be practically impossible to specifically refer in the title to everything that was deemed proper to be embodied in the Act, without making the title so long that its length might have the effect of causing those interested to overlook the very thing they were most interested in. It was not the design of the framers of the Constitution to require a bill of particulars to be set out in the title. Many additional decisions might be cited, but those referred to above are sufficient to show what this Court and its predecessors have regarded as *the subject* of an Act of this kind.

Second: It is further contended that this section has no real or substantial relation to the police powers of the State. In *Lochnar* v. *State,* 111 Md. 660, JUDGE BURKE referred to Chapters 174 and 179 of the Acts of 1908. Chapter 174 prohibited licenses for the sale of liquor within the town of Sparrows Point and within three miles of the school house in that town. JUDGE BURKE said: "The Act of 1908, Chapter 179, contains careful and well considered restrictions concerning the sale of liquors in Baltimore County. It is a police regulation, and its object is to conserve the public morals and public order by forbidding the unregulated and indiscriminate sale of spirituous and fermented liquors in that county. The public welfare demanded proper legislation upon the subject, and the Legislature was acting within its well recognized powers in passing the Acts mentioned."

JUSTICE HARLAN, in the well known case of *Mugler* v. *Kansas.* 123 U. S. 666, said that "we can not shut out of view the fact, within the knowledge of all, that the public health, the public morals, and the public safety may be endangered by the general use of intoxicating drinks. nor

the fact, established by statistics accessible to everyone, that the idleness, disorder, pauperism and crime existing in the country are, in some degree at least, traceable to this evil." Again he said, "if in the judgment of the Legislature the manufacture of intoxicating liquors for the maker's own use, as a beverage, would tend to cripple, if it did not defeat, the effort to guard the community against the evils attending the excessive use of such liquors, it is not for the courts, upon their views as to what is best and safest for the community to disregard the legislative determination of that question. * * * No one may rightfully do that which the law-making power, upon reasonable grounds, declares to be prejudicial to the general welfare."

If the State has the power to prohibit the sale of liquor it also has the power to prohibit the giving of liquor by one person to another. The evil to be avoided is the communication from one to another of an article which may be injurious to the recipient, or which, by its general use may demoralize or harm the whole community. It is not attempted to restrain a man's private indulgence in drink. But that is because the law deals not with the isolated individual, but with them in their relations to each other. Upon the delivery of a noxious substance from one to another, a relation is established of which the law may take cognizance. And it is perfectly immaterial whether the transfer be by sale, barter or gift. The evil is not in the receipt of money for the article furnished, but in the furnishing of it, and so the authorities hold. *Black on Intoxicating Liquor*, section 39.

If, then, in the judgment of the Legislature it be necessary or proper to have such regulations as are found in section 9F in order to insure a better regulation of the sale or use of intoxicating liquors, the courts can not rightly interfere. These cases are before us on demurrers and hence there is no evidence in the Record, but judges, as well as other people, know how frequently disturbances of the public peace result

from such gatherings on Sunday as are referred to in this statute, when liquor can be obtained and is used to excess, as it is likely to be. They would have to forget the cases they have sat in and ignore the dockets of their own courts if they remained in ignorance of the fact that there may be need of such legislation for the protection of the public welfare.

In *Sligh* v. *Kirkwood*, 237 U. S. 52, it is said: "The limitations upon the police power are hard to define, and its far-reaching scope has been recognized in many decisions of this Court. * * * The police power in its broadest sense includes all legislation and almost every function of civil government. *Barbier* v. *Connolly*, 113 U. S. 27. It is not subject to definite limitations, but is coextensive with the necessities of the case and the safeguards of public interest. *Camfield* v. *U. S.*, 167 U. S. 518, 524. * * * It is not susceptible of circumstantial precision. It extends, we have said, not only to regulations which promote the public health, morals and safety, but to those which promote the public convenience or the general prosperity. * * * And further, 'it is the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government.' *Eubank* v. *Richmond*, 226 U. S. 137, 142."

Our own decisions on the subject are too numerous to justify an attempt to cite all or even the most important ones. But in addition to the above we would refer to *Deems* v. *Mayor, Etc., of Baltimore*, 80 Md. 164; *Ford* v. *State*, 85 Md. 465; *State* v. *Broadbelt*, 89 Md. 565; *Stevens* v. *State*, 89 Md. 669; *State* v. *Hyman*, 98 Md. 596; *Rossberg* v. *State*, 111 Md. 394, and *Brown* v. *Stubbs*, 128 Md. 129. Many others might be cited, but the above sufficiently illustrate the character of legislation on the subject approved by this Court. It was said in *Ford* v. *State, supra*, in referring to a statute intended to aid in suppressing the lottery business: "When considered in connection with the previous legislation on this subject, it is evident that the Legislature

found that the statutes in force were not sufficient to prevent
the lottery business in this State, and it was therefore made
a crime for anyone to have any of the articles named in his
possession." It is well settled by the Supreme Court and
this Court that unless the statute in question has no real or
substantial relation to the public health, the public morals,
the public safety (and as has been said in later cases, the
public welfare or convenience), or is beyond all question a
plain, palpable invasion of rights secured by the fundamental
law, the judgment of the Legislature will not be reviewed or
interfered with. The Supreme Court said in *Price* v. *Illi-
nois,* 238 U. S. 446, 452, that "It is plainly not enough
that the subject shall be regarded as debatable. If it be
debatable, the Legislature is entitled to its own judgment."
That such a statute is not contrary to the Fourteenth Amend-
ment can be seen by reference to *Mugler* v. *Kansas, supra,*
and many of our decisions cited above. We are, then, of
opinion that section 9F was validly passed under the police
power of the State, and that it is not contrary to the Federal
or our own Constitution.

Third: The remaining question to be considered is
whether the indictments are sufficient, regardless of the two
points already disposed of. It will be necessary to pass on
them separately. (*a*) The one against the Vanuras alleges
that they on the 21st day of May, 1916, "at Baltimore
County aforesaid, then and there being the owners of a
certain park, ground and shore, in said county, unlawfully
did lease, rent and hire out the same for a certain picnic
* * * to be then and there held on the Sabbath Day, com-
monly called Sunday, at which said picnic * * * fermented
liquor, to wit, beer, was then and there drunk and was
then and there to be drunk on said Sabbath Day," etc.

It is urged that the indictment does not "state specifically
the location of the property in question, in other words, the
traversers may have been the owners, lessees, renters or occu-
pants of more than one park, ground or shore in Baltimore

County, all of which may have been rented, leased or hired, on the particular day mentioned therein, to different parties." In the first place, the indictment alleges that the traversers "being then and there *the owners* of a certain park," etc., and it does not allege that they were lessees, renters or occupants. But the case of *P. W. & B. R. R. Co.* v. *State,* 20 Md. 157, would seem to be a sufficient answer to this objec-, tion.   On page 163 the Court said: "After a careful examination of the indictment and the legal defects alleged to be apparent therein, we are of opinion that it has the essential attribute of certainty to a reasonable extent.   See *State* v. *Nulwell,* 1 Gill, 54.   It describes the venue as in Cecil County.   It describes the locality of the alleged nuisance and the time of taking the inquisition, as at the county aforesaid.   It specially sets out in each count the nature of the nuisance.   That it was a common nuisance to the citizens of Cecil County, and as no other county is named in the indictment, no presumption could arise that the offence was committed in any other county."

So although it might be better in such case as this to be more specific as to the location of the place, that was not essential to the validity of the indictment.   Nor do we think it necessary to allege by whom the liquor was drunk or to be drunk.   So far as the latter is concerned it would practically nullify that provision of the statute, if it was necessary to allege and prove by whom the liquor was to be drunk, for in the first place even if the traverser knew by whom it was to be drunk it would generally be impracticable, if not impossible, for the State to get such information, and if the indictment must allege and the State must prove the names of such persons, the traverser might testify that they were not the persons and it would be impossible for the State to meet his evidence.   But it is not likely that the traverser himself would know, as he could not well tell who would be present or who would drink liquor there.   It is not the kind of case in which it would be required to allege that it was *to be*

*drunk* by persons unknown to the grand jurors, as it is perfectly manifest that they could not know. Then as to the allegation that the beer "was then and there drunk" there can be no valid reason for requiring the State to allege and prove the names of the persons by whom it was drunk. In the first place, if it be not necessary, as we hold, to give the names of the persons by whom the liquor was *to be drunk,* we do not understand how the indictment could be held to be defective when it alleges that the beer was drunk *and was to the drunk.* In *Stearns* v. *State,* 81 Md. 341, JUDGE BRISCOE, in speaking for the Court, said: "If a statute makes it a crime to do this or that or that, mentioning several things disjunctively, all may indeed, in general, be charged in a single count, but it must use the conjunctive 'and' where 'or' occurs in the statute, else it will be defective as being uncertain. Therefore an indictment upon a statute of this kind may allege in a single count that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction 'and' where the statute has 'or,' and it will not be double, *and it will be established at the trial by proof of any one of them."*

The traversers were not indicted for selling, giving, or in anyway furnishing liquor, but for *leasing, renting* and *hiring out* a place for a picnic, etc., at which liquor was drunk and was to be drunk. The language of the statute was literally followed, excepting it was alleged conjunctively instead of disjunctively. The general rule is that when an offense is created by statute the indictment is sufficient if it follows the language of the statute. *State* v. *Dent,* 3 G. & J. 8, 11; *Parkinson* v. *State,* 14 Md. 184; *Cearfoss* v. *State,* 42 Md. 403; *Mincher* v. *State,* 66 Md. 227, 234; *State* v. *Falkenham,* 73 Md. 463; *Dickhaut* v. *State,* 85 Md. 451, 464; *Stevens* v. *State,* 89 Md. 669, 675, and many other cases might be cited.

The rulings on the demurrer in *Mincher* v. *State, State* v. *Falkenham* and *Simond* v. *State,* 127 Md. 29, when the facts

in them are considered, go very far towards disposing of the objection of the appellants on the ground being now considered, and in *Mincher* v. *State,* JUDGE MILLER pointed out the distinction between that case and *State* v. *Nutwell,* 1 Gill, 54. In this case it matters not how many or how few drank the beer, or indeed whether any of it was then and there drunk, if it was there *to be drunk,* for, as we have seen, if the State failed to prove that any of it was drunk, but proved that it was there to be drunk, then under *Siearns* v. *State,* they were liable.

The only question which has given us any difficulty is whether the indictment should not have alleged *to whom* the park, ground and shore were leased, rented and hired out, or, if unknown to the grand jurors, should have so alleged. It is not easy to understand why the name of the party to whom the property was leased could not be known to the State's Attorney and the grand jurors, if there was sufficient evidence to justify the indictment for leasing the property, but if there be such a case it could be alleged that the person to whom it was leased was unknown. After thoroughly considering the question, we have concluded that the indictment against the Vanuras is defective, in not alleging the name of the person to whom the property was leased, rented or hired out, or alleging that it was unknown to the jurors, if such was the fact. It is possible that persons might take possession of the property without the owner's knowledge, and in his absence, and use it for a picnic, etc., where liquors were drunk or to be drunk, and as it can be readily ascertained who the lessee was the traversers ought to be informed as to whom it is contended they rented the property. In cases which are more or less analagous, the name of the lessee is stated in the indictment. For example, it is said in 14 *Cyc.* 500, that an indictment of the lessor for renting a house for bawdy purposes should give the name of the lessee, or state some reason for not giving it. In *Smith* v. *State,* 6 Gill, 425, our predecessors said that an indictment for leasing to

another a house to be used as a common bawdy house must contain a certain description of the crime and a statement of the facts by which it is constituted. It is there said that it need not state when the lease commenced or was to end, as "it would be in vain to prosecute, if in order to support the indictment, this proof, that may be in the possession only of the opposing parties, was required." The indictment in that case did allege the name of the lessee. The Court said that the offense charged was described with convenient certainty, so as to enable the defendant to make his defense and to plead the indictment in bar to any subsequent proceeding.

We find nothing in section 10 which was required to be negatived in an indictment under section 9F as suggested by counsel for the appellants. It follows that the judgment against the Vanuras must be reversed, but, of course, they can be reindicted and tried.

(*b*) Most of what we have said above applies to the indictment against Benesch. He was indicted under what we have denominated paragraph (*b*) and hence there was no such question in his case as we have just said made the indictment in the Vanura case defective. It is charged that he did then and there hold, conduct, give and take part in a certain picnic. etc., following the language of the statute. For reasons stated above, we find no such defect in the indictment against him as to require the judgment against him to be reversed, and it will be affirmed.

> *Judgment in case of Anton Vanura and Lizzie Vanura* v. *State* (*No.* 54 *Court Docket, Oct. Term,* 1916) *reversed.*
>
> *Judgment in case of Moritz Benesch* v. *State* (*No.* 53 *Court Docket. Oct. Term,* 1916) *affirmed, the appellant to pay the costs, including one-half of the cost of printing the brief for the State.*