# WILLIAM H. HICKEN *vs.* STATE OF MARYLAND.

## *Indictment—Sale of Butter Substitute.*

An indictment charging that accused did expose for sale and sell "as for natural butter a certain substitute made or colored to imitate natural butter," without giving a specific description or the name of the substitute, in violation of the statute, sufficiently charged an offense under Code, arts. 137, 138, it alleging the essential fact of the handling of a substitute for natural butter, which is, in so many words, prohibited.          pp. 252, 253

An indictment charging a sale of oleomargarine in a package not branded as required by Code, art. 27, sec. 136, was not demurrable on the ground that the statute requires the branding of wholesale packages only, if the indictment did not charge a retail sale.          p. 253

The requirement of Code, art. 27, sec. 136, in connection with sales of butter substitutes, that "each vessel, package, roll or parcel of such substance" shall be branded with the true name of the substitute, is not confined to wholesale packages.          p. 253

*Decided June 21st, 1924.*

Appeal from the Criminal Court of Baltimore City (GORTER, C. J.).

Criminal proceeding against William H. Hicken. From a judgment of conviction, defendant appeals. Affirmed.

The cause was argued before PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and BOND, JJ.

*Malcolm J. Coan,* with whom were *Curran & Leach* on the brief, for the appellant.

. *Willis R. Jones, Assistant Attorney General,* with whom were *Thomas H. Robinson, Attorney General,* and *Herbert R. O'Conor, State's Attorney for Baltimore City,* on the brief, for the State.

BOND, J., delivered the opinion of the Court.

· The appeal is from a judgment imposing a fine upon the appellant after conviction on an indictment for violation of sections 135 to 138, inclusive, of article 27 of the Code of Public General Laws, in the sale of butter substitutes. Error is alleged in the overruling of a demurrer to each of the first and second counts of the indictment.

The first count charges that the accused, on a day specified, "unlawfully did offer and expose for sale and sell and deliver to one Phyllis Teakle as for natural butter a certain substitute made or colored to imitate natural butter not manufactured exclusively from pure milk or cream or both, with or without salt or harmless coloring matter." Section 135 of article 27 prohibits the offer and exposure for sale, sale and delivery "as for natural ·butter, renovated butter, butter made·by the Quinness patent or process, or that made by other similar process, whereby casein of milk or other ingredients are made to imitate and resemble natural butter made from cream or other substitute made or colored to imitate natural butter." And section 138 defines the term "natural butter" in the previous section as "the product usually known by the term 'butter,' and which butter is man-· ufactured exclusively from pure milk or cream, or both, with or without salt or harmless coloring matter." It will be seen, therefore, that the first count of this indictment charges an offense in the words of these two sections, except that it omits the reference to renovated butter and the other substances specifically described, and uses only the final, general description of "substitute made or colored to imitate natural butter," as defined in section 138. On the demurrer the appellant contends that the indictment should give a specific description or name of the substitute. We do not think it necessary in this instance.

It is ordinarily sufficient, in an indictment for an offense created by statute, to describe the offense in the words of the statute, and this count does charge the essential fact of the handling of a substitute for natural butter which is, in so many words, prohibited. *Mincher* v. *State*, 66 Md. ˙227,

234; *Benesch* v. *State,* 129 Md. 505, 518. Of course, the practical purpose of an indictment, that of giving the accused and the court the information they may need, and of defining the ground of the prosecution so as to give reasonable assurance against the possibility of another prosecution on the same ground, must always be carried out. But we do not think that purpose requires the analysis and specific description of the substitute handled by the accused in this instance. The charge that the substance sold in a specified sale was a substitute for, and imitation of, natural butter, and that it was handled in violation of the statutes cited, was, in our opinion, sufficient. We have found no error in the overruling of the demurrer to the first count, therefore.

The second count charges that the accused on the same day, "did offer and expose for sale and sell and deliver to the said Phyllis Teakle certain articles of food, to wit, Oleomargarine, in a package and parcel not plainly and conspicuously branded by a stamp or label with the true name of such substance in letters not less than 36, bold faced gothic capitals, which said package and parcel was not then and there plainly and conspicuously branded by a stamp or label with the name of each article or ingredient used or entering into the composition of such substance in letters of reasonable size." The objection made to this count is that it has been drawn on the assumption that the statute, section 136, requires the branding of retail packages, whereas the requirement is only that the bulk or wholesale packages be branded. On demurrer to the count it would be sufficient to observe that it does not charge a retail sale, and consequently there is nothing on which to base that distinction. It merely charges a sale, in the exact words of the statutory prohibition, and as has been said before, that is ordinarily sufficient. But we are not able to accept the view that the requirement is confined to wholesesale packages. The statute does not say so. And we do not see any ground for holding that the Legislature so intended. The words are that "each vessel, package, roll or parcel of such substance" shall be branded with the true name of the substitute; and they seem to us rather to refer

to the retail packages especially. The purpose of the statute
is to make sure that the customer shall be informed of the
nature of the substance he is buying; and the retail package
to be delivered to the customer would be such a natural and
appropriate place for the branding which is to accomplish
this, that the presumption would be rather that the Legisla-
ture intended to include it.

*Judgment affirmed, with costs.*