## HARRY WELLER *v.* STATE OF MARYLAND.

*Intoxicating Liquor—Manufacture for Sale—Indictment—Evidence—Confessions—Corroboration.*

An indictment for manufacturing intoxicating liquor for sale, in violation of the local liquor law of a county, need not negative the possibility that the manufacture was pursuant to the license and authority of the United States.          p. 280

An indictment for violation of Acts 1916, ch. 30, as amended by Acts 1924, ch. 10 (the local liquor law of Washington County), the several counts of which charged the offense in the language of the statute, and negatived such exceptions to the operation of the former act as were allowed by subsequent legislation, was not subject to demurrer.          p. 280

On a prosecution under a local law for the manufacture for sale of intoxicating liquor, specified in the bill of particulars as

whiskey, testimony of qualified witnesses that there were found on defendant's property a still and its equipment, that liquid found there in barrels was distilled spirits and smelt like and was "moonshine whiskey" of a named alcoholic content, that chemical analysis showed this liquid to be "forerunnings from the distillation," that in other barrels was mash fit for distillation, and that the distilled spirits was an intoxicating liquor, was admissible.                                              p. 282

Whiskey is a potable beverage of intoxicating quality made from the ardent spirit distilled chiefly from grain, ordinarily corn and rye, and if the distillation is illicit its appropriate name in the United States is "moonshine" or "moonshine whiskey."

p. 283

On a prosecution for the illegal manufacture of whiskey for sale, witnesses having testified to the finding on defendant's premises of liquor described by them as "moonshine," it was for the jury to find, from this and other evidence, whether the traverser's enterprise was in fact the manufacture of whiskey for sale.                                                        p. 283

On a prosecution for the illegal manufacture of whiskey for sale, evidence of voluntary declarations by the traverser, after his arrest, that the still, mash, and whiskey found on his premises were his, that he wanted to make five barrels of whiskey and then stop, and that he did not sell any but good whiskey and then only to the best men in the community, was properly admitted, there already existing sufficient evidence, both direct and circumstantial, that the crime of illegally manufacturing whiskey for sale had been committed by some one.      p. 283

While ordinarily an extra judicial confession of the accused does not warrant a conviction, unless there be also independent evidence to establish the *corpus delicti* of the crime, the accused's identity or agency as the criminal is not a necessary element of the corroboration.                                p. 284

*Decided March 10th, 1926.*

Appeal from the Circuit Court for Washington County (DOUB, J.).

Criminal proceeding against Henry Weller. From a judgment of conviction said defendant appeals. Affirmed.

The cause was submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Levin Stonebraker* and *Augustine S. Mason,* for the appellant.

*Thomas H. Robinson, Attorney General, John Hubner Rice, Assistant Attorney General,* and *Ellsworth R. Roulette, State's Attorney for Washington County,* for the State.

PARKE, J., delivered the opinion of the Court.

The appellant was indicted and tried for the sale, the manufacture for sale, and the purchase for sale, of intoxicating liquor, in violation of the local liquor law of Washington County. He demurred to the indictment, and, on the demurrer being overruled, made a motion to quash the second count of the indictment, which charged a manufacture for sale, on the ground that it did not negative the possibility that the manufacture for sale of intoxicating liquor was pursuant to the license and authority of the United States. The traverser was not indicted for an offence under the National Prohibition Act, but for one against the local liquor law of Washington County, and so the offence charged was against the laws of Maryland, which in the lawful exercise of its sovereignty had forbidden the manufacture for sale of intoxicating liquor within one of its political units. Hence the motion to quash was rightly refused. See *Underhill's Criminal Evidence* (3rd Ed.), sec. 725; *Molinari v. State,* 141 Md. 564; *Ulman v. State,* 137 Md. 642; *Weisengoff v. State,* 143 Md. 638; *Gray v. State,* 96 Md. 692. Nor was there sufficient ground for the demurrer. The indictment was drawn under section 5 of chapter 30 of the Acts of 1916, as amended by chapter 10 of the Acts of 1924, and it was framed conformably to the recognized and correct practice

where the crime is of a statutory creation, as the several counts of the indictment charged the offence in the language of the statute, and negatived such exceptions to the operation of chapter 30 of the Acts of 1916, as have been allowed by subsequent legislation. Acts of 1916, ch. 30; Acts of 1924, ch. 10; *Reynolds v. State,* 141 Md. 639; *Kelly v. State,* 139 Md. 204, 208; *Howes v. State,* 141 Md. 532; *Foxwell v. State,* 146 Md. 90; *Kiefer v. State,* 87 Md. 562; *Curry v. State,* 117 Md. 587; *Benesch v. State,* 129 Md. 505, 518.

The traverser demanded a bill of particulars disclosing the kind of intoxicating liquor meant by the general terms of the indictment; and the bill of particulars furnished disclosed that the intoxicating liquor or beverage mentioned in the indictment was whiskey. Bagby's Code, art. 27, sec. 561. There was no evidence of a purchase of whiskey for sale, nor sufficient proof of its sale within a year preceding the indictment; but the trial of the appellant resulted in a conviction on the second count of the indictment, for the manufacture for sale of intoxicating liquor, and an appeal was taken from the judgment of the court. The remaining questions brought up by the appeal are presented by eleven bills of exceptions, which were taken to rulings on the evidence, which fall into two groups—the first of which related to the illicit manufacture of whiskey for sale; and the second to admissions of the traverser tending to establish that he was unlawfully manufacturing whiskey for sale.

1. The State's evidence tended to prove that the traverser owned a property in Washington County where, on the night of April 30th, 1925, were found, on the first floor of a warehouse, twenty-five mash barrels, every one with a capacity of fifty gallons; a still of one hundred and fifty gallons capacity; a gas engine; three fifty gallon barrels; and thirty-two hundred pounds of rye and corn meal. When the raiding officers reached the premises. the still was not actually in operation, but it had been a very short time before their arrival, as the cap had been recently removed, the mash

was smoking, and steam was arising from the still. In the twenty-five mash barrels were about one thousand gallons of fermenting mash, ready for distillation; and the three barrels were full and some of their contents was yet warm from the still. After samples of the mash and of the contents of the barrels had been taken by the officers, and marked for identification, the plant was destroyed, and one of the officers went to traverser's residence and notified him to appear the next morning before the United States Commissioner at Hagerstown.

The prosecution offered proof by competent witnesses, under the third exception, that the dismantled plant was a still and its equipment; under the first exception, that the liquid in the three barrels was distilled spirits; under the fifth and seventh exceptions that the distillation smelled like "moonshine whiskey" and "moonshine"; under the eighth and ninth exceptions, that the chemical analysis of the liquid in the barrels established it to be what was known in the art as the forerunnings from the distillation, and that the liquid was distilled spirits, known under the general term of moonshine whiskey, and whose alcoholic contents by volume were 10.90 per centum and whose proof was 21.8, being twice the alcoholic contents by volume; under the tenth exception, that the bottled sample of the mash taken from the mash-barrels showed it fit for distillation, with 2.32 per cent. of alcohol by volume; and, under the eleventh exception, that the barrelled distilled spirits was an intoxicating liquor. As might have been anticipated, all these rulings of the trial court have been under consideration in appellate tribunals, and find support in their decisions. The testimony admitted was given by qualified witnesses, was not remote in time, and bore in every instance directly on the question whether the traverser had been engaged in the unlawful manufacture of whiskey for sale, and was, therefore, relevant and admissible. *Underhill on Criminal Evidence* (3rd Ed.), secs. 726, 727, 729, 730, 746; *State v. Magnano*, 97 Conn. 543.

The principal ground urged by the appellant in support of

these exceptions is that by the bill of particulars the evidence
must be confined to proof of the manufacture of whiskey.
*Jules v. State,* 85 Md. 305; *Curry v. State,* 117 Md. 587.
We do not find that this rule was violated by the admission
of the evidence in controversy.  Whiskey is a potable bev-
erage of intoxicating quality made from the ardent spirit
distilled chiefly from grain.  Its making is commonly from
corn and rye, and in the process of its conversion into whiskey
the grain is usually ground into meal, which is the principal
ingredient of the mash from which the whiskey is distilled.
If the distillation is from rye grain, it is called rye whiskey
and if from the grain of corn it is known as corn whiskey;
and, no matter what was the grain, if the distillation was
illicit, its appropriate name in the United States is "moon-
shine whiskey," and when this is the nature of the intoxicant,
the term "moonshine" or "moonshine whiskey" is indiffer-
ently employed.  2 *Wooten and Thornton on Law of Intoxi-
cating Liquors,* sec. 842, note; *State v. Edwards,* 106 Oreg.
58; *State v. Harris,* 106 Oreg. 211; *State v. Critzer,* 122
Wash. 88; *Register v. State,* 19 Ala. App. 11.         „

The evidence offered tended to prove that whiskey was
being manufactured, because it established the existence of
a suitably equipped plant, with the principal raw material
at hand, with some in course of conversion into whiskey,
and with the barrelled distilled product, which if not whiskey,
was distilled spirits in the course of being made into whiskey
through successive re-distillations.  It could not be seriously
contended that the plant and its operation were not designed
for and in the course of the making of whiskey at the time
the officers made the seizure.  When the witnesses used the
term "moonshine" in describing the distilled spirits, they
were at once indicating their opinion of the stage the dis-
tillation had reached and the illicit nature of its manufac-
ture.  It was for the jury to find from this and the other
evidence if the enterprise of the traverser was in fact the
manufacture of whiskey for sale.

2.  The second, fourth and sixth exceptions were taken

to the confessions made by the traverser. The trial court admitted, under its rulings, testimony to the effect that the traverser declared to the officers, on several occasions after his arrest, that the still, mash and whiskey found on his premises were his, and that he wanted to make five barrels of whiskey and then stop; that the distilled spirits seized were of a low grade and ought to be re-distilled; that he did not sell any whiskey that was not aged and good, and then to the best men in Hagerstown.

These declarations of the traverser were voluntarily and freely made, without the inducement of hope of fear, and they were relevant as tending to show that the manufacture of the whsikey was by the traverser for the purpose of sale. It is quite true that the general rule is that an extrajudicial confession of the accused does not warrant a conviction, unless there be, also, independent evidence to establish the *corpus delicti* of the crime. *Wharton on Criminal Evidence* (10th Ed.), secs. 633, 631 and *infra*. In this jurisdiction, where the jury in a criminal case is judge of both the law and the facts, the rule is enforced, primarily, by rejecting the evidence of an extrajudicial confession by the traverser, unless there then exists, or there is a proffer of proof later to furnish, some independent evidence to establish the occurrence of the specific kind of injury or loss or act, through a criminal agency, which together established the commission of a crime by some one; and, secondarily, by granting a new trial when the conviction was improperly obtained through insufficient corroboration of the confession. In the instant case the testimony of the confessions was properly admitted because there already existed sufficient evidence, both direct and circumstantial, of the crime of illegally manufacturing whiskey for sale having been committed by some one. In our judgment, the sounder view of the rule should not include as a necessary element of the corroboration required to make admissible a confession, the accused's identity or agency as the criminal. If we were to hold differently, the proof requisite for the conviction of the accused for the commission

of the particular crime charged would have to be evidenced independently of the confession, to make the confession admissible. 4 *Wigmore on Evidence* (2nd Ed.), secs. 2070-2073; *Wharton on Criminal Evidence* (10th Ed.), secs. 634, 633, 325A; *Underhill on Criminal Evidence* (3rd Ed.), secs. 36, 37, 240, 241; 1 *Bishop on Criminal Procedure*, secs. 1058, 1244; *Isaacs v. United States,* 159 U. S. 487, 490.

*Judgment affirmed, with costs.*