## GLAROS *v.* STATE
[No. 15, September Term, 1960.]

274

*Decided October 19, 1960.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*William J. O'Donnell,* with whom was *Joel H. Pachino* on the brief, and *John L. Sanford, Jr.,* with whom was *Lee W. Bolte* on the brief, for appellant.

*Joseph S. Kaufman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *C. Burnam Mace* and *C. Awdry Thompson, State's Attorney* and *Special Assistant State's Attorney,* respectively, *for Dorchester County,* on the brief, for appellee.

Hammond, J., delivered the opinion of the Court.

Appellant, Stephanos Glaros, indicted as "Alias 'Steve the Greek'," was convicted by a jury of larceny of $155,000 in cash stolen from the battered safe of a lower Dorchester County seafood packer and general storekeeper. Glaros claims prejudicial error because: (1) the court refused to permit him to see before trial notes made by policemen after their conversations with him; (2) the court refused to ask prospective jurymen certain questions on *voir dire;* (3) admissions or confessions were admitted in evidence although (a) the answers of the police officers as to the voluntariness of the statements were conclusions, (b) the chain of custody was not properly proven, (c) threats and inducements actually were made, and (d) the statements harmful to Glaros were taken out of context without requiring the witness to relate the whole conversation; (4) a policeman was not ordered to leave the trial table of the prosecution during the examination of Glaros; (5) the evidence was legally insufficient to go to the jury; and (6) the court's instructions on circumstantial evidence were deficient.

We can find no substantial merit in any of the contentions.

The court ordered the prosecution to permit inspection and copying of all memoranda or transcripts of statements of Glaros made at the time of the conversation, but denied inspection of any made after the conversation. Glaros concedes he was given copies of the records two State troopers made at the time of the conversations. The notes he was not given were those made by two other troopers after the conversation which were used by them on the stand to refresh their recollections. The notes were not offered in evidence and the testimony they refreshed was cumulative. The matter was one for the discretion of the trial court, Maryland Rule 728 (Discovery and Inspection), and we find no abuse of discretion. *State v. Haas,* 188 Md. 63, 76.

The court asked the jury panel on *voir dire* whether they could, without bias or prejudice, render a verdict solely on the evidence "without regard to the race, creed or nationality of the defendant." The court refused to ask if they had any prejudice against a Greek which would induce a guilty verdict on less evidence than they would require to convict someone else (Glaros, in fact, was born in the United States of Greek parents), and whether any juror or member of his immediate family was presently indebted to the victim of the robbery or his wife, or had been within the past five years. We think the general question as to bias against any race, creed or nationality eliminated the need to ask the specific question as to possible prejudice against a Greek. In *Brown v. State,* 220 Md. 29, 36, relied on by appellant, "The court below asked no question whatever as to bias or prejudice, even in the broadest terms." The question asked in the case before us was not inadequate because too general. See *Goldstein v. State,* 220 Md. 39, 46, which distinguished *Casey v. Roman Catholic Archbishop,* 217 Md. 595, on the form of the question there, under the facts and chronology of that case.

There was no requirement that the court ask the questions as to whether a juryman owed money to the victims of the robbery. It is urged that if one did he would be prejudiced against the accused because the hard-pressed victim would be likely to call on him to pay what he owed. The argument seems far-fetched.

Before we discuss the contentions of the appellant in regard to the admissions or confessions he made, we note that as in *Cooper v. State,* 220 Md. 183, 187, there is room for question as to whether the incriminating statements constituted admissions or confessions. As that case said, perhaps the nature of the statements "* * * is best described in the words of Chief Judge Bond in *Markley v. State,* 173 Md. 309, 314, * * * as a statement in the nature of a confession." We conclude, as we did in the *Cooper* case, that since the State has treated the statements, singly or collectively, as a confession and has felt itself bound to meet the burden it bears as to confessions, we shall so consider them for the purposes of the appeal.

Not persuasive is the appellant's claim that it was error to allow police officers to answer whether any violence had been used against Glaros and what if any threats or promises had been made to him, to compel or induce his admissions or confessions, because the answers would be the opinions or conclusions of the witness. Authorities holding inadmissible, as conclusions, bare assertions or answers that confessions of an accused were made freely and voluntarily are relied on.

Assuming these decisions to have been correct in holding such an answer an opinion or conclusion of an unqualified witness on a point as to which the court and, in Maryland, the jury, must ultimately draw their own conclusions and form their own opinions, we think the same cannot be said of an answer as to the use of violence, or the making of threats or promises. In a remote and abstract sense, the answers embody opinions and conclusions but this is true to some extent of the most factual answer. The assumption that there is a difference in kind between "fact" and "opinion" has been said to be an illusion. "There is no conceivable statement however specific, detailed and 'factual,' that is not in some measure the product of inference and reflection as well as observation and memory." *McCormick, Evidence,* Sec. 11, p. 22; see also 7 *Wigmore, Evidence,* 3rd Ed., Sec. 1919. Essentially the testimony as to the absence of violence, threats or promises is factual—it is what the witness saw and heard (or, more precisely, as to what he did not see or hear), rather than

what he inferred or believed. The courts have held that testimony phrased like that before us is not subject to the objection that it is the opinion or conclusion of the witness. *People v. Jackson* (Cal.), 71 P. 566, 567, *et seq.; Crain v. State* (Ala.), 52 So. 31, 32; *State v. Castelli* (Conn.), 101 Atl. 476, 479; *People v. Bannon* (Cal. App.), 209 P. 1029, 1033.

Each of the police witnesses gave testimony of the facts and circumstances as to custody and the manner of asking the questions, and their content and that of the conversation generally, in order to show that Glaros voluntarily gave incriminating answers or volunteered incriminating information. The questions relating to violence, threats and promises were to negative anything beyond what had been detailed. It has been held specifically that they are admissible for just such purpose. *People v. Treichel* (Mich.), 200 N. W. 950, 953; *State v. Kerns* (N. D.), 198 N. W. 698, 703. It is difficult to see how negatives reasonably and practicably could otherwise be proven. The question of whether an answer will properly aid the jury is one primarily for the discretion of the trial court. We find no abuse of discretion here.

The claim that the evidence of the chain of custody did not adequately meet the State's burden of showing that no force, coercion or inducement brought about the incriminating statements, will not stand analysis. It is argued that several State policemen and an agent of the Federal Bureau of Investigation, none of whom took the stand, were with the troopers who had Glaros in custody in various places before he was taken to the Easton State Police barracks and that, while there in a cell for most of several days, other State troopers could have approached him. The answer the record gives is that the troopers who were with Glaros at all times prior to his incarceration at Easton testified that no one used violence or made threats or promises during that time. The barracks commander at Easton and the officers who there interrogated Glaros said that to the best of their knowledge no one who did not testify had contact or communication with him while he was at Easton.

Glaros did not at the trial, and does not now, claim that

anyone who did not testify ever even talked to him; he merely urges that the possibility that they could have destroys the State's proof as to custody. The contention is unsubstantial.

Glaros says that certain troopers and the State's Attorney of Dorchester County either threatened him or offered inducements of leniency if he would tell where the stolen money was. All the State's police witnesses and the State's Attorney denied completely that any threats or promises were made and the triers of fact believed them, justifiably we think.

The police witnesses who testified as to incriminating answers given or statements made by Glaros did not make transcripts of their conversations with him, but only notes or memoranda. They testified to certain sentences and remarks Glaros had spoken in the course of long conversations—such as, "I have got all this money * * *"—which the witnesses remembered as significant. Each witness gave the general tenor of the conversations and the substance of the subject matter under discussion, and then outlined any incriminating statements or answers which were made. We think no sound objection can be made to this procedure. *Felkner v. State,* 218 Md. 300, 311; *Basoff v. State,* 208 Md. 643; *Bulluck v. State,* 219 Md. 67, 71.

While Glaros was testifying, Captain Carroll of the Baltimore City Police Department, Narcotics Division (so identified by Glaros from the stand) was seated at the trial table with the State's Attorney. The court refused Glaros' request that he be required to leave, a request first based on the theory that he was to be a witness and that all witnesses had been ordered excluded from the courtroom. When told the captain was not to be a witness, the request was later renewed on the claim that his presence at the table "intimidated" the witness. (Captain Carroll had "picked up" Glaros several times in Baltimore for investigation and apparently had, to some extent, followed his activities.) We see no prejudice to appellant in the following of a long established practice of having a police officer familiar with the case or the defendant assisting the prosecutor at the trial table.

There was, in our view, ample evidence to allow the jury to find that Glaros was present when the safe was broken into

and the money taken. Particles of material identified as safe cement from the door of the safe, as well as particles of paint of the same color, texture and type of composition as the paint on the safe were found in the trunk of Glaros' car several days after the robbery. A mesh sack containing onions had been emptied in the store and taken in the robbery. Onion skins were found in the trunk of Glaros' car. In a can in the rear of Glaros' home in Anne Arundel County were found the charred remnants of papers and documents which had been in the safe. Also found in the car were a "bunch of keys," a nail clipper and a key chain with a cash register key and a knife on it, all of which were in the store when it was robbed.

Recent possession of the fruits of crime, unexplained, justify the inference that the possessor is the criminal; the inference being one of fact, to be drawn by the trier of fact. *Debinski v. State,* 194 Md. 355, 360; *Jordan v. State,* 219 Md. 36, 46; *Butz v. State,* 221 Md. 68, 77.

In addition to the physical evidence there was introduced a number of incriminating statements of the appellant, such as "his freedom meant more to him than the money," that he didn't know how he could have been so stupid (when confronted with the physical evidence), that he had been to the scene of the crime several times and had "cased" the place with binoculars, that he was sorry for the victim and wanted to return the money, that he had the money and would not let his alleged confederates ("stupid fools") have any, and that "This Greek has it all," that he had it in a safe place in Maryland. On another occasion he said he had operated alone and that all "you have to have is muscle" (referring to opening the safe). Again, he said "I'm an expert. Don't you think I could * * * handle this safe by myself?"

Clearly the State's evidence took the case to the jury which was not required to believe the principal defense of alibi (that Glaros was playing cards in Baltimore all the night of the robbery, testified to by him and several witnesses in his behalf).

The appellant requested the court to charge the jury that: "It is not sufficient that they (the circumstances or facts) coincide with and render probable the guilt of the accused, but they must exclude every other reasonable hypothesis. No

other conclusion but that of guilt of the accused must fairly and reasonably grow out of the evidence, but the facts must be absolutely incompatible with innocence, incapable of explanation upon any other reasonable hypothesis than that of guilt." Due exception was taken to the court's refusal to do so.

The requested instruction would have been proper if it had been coupled with an instruction that it was applicable if the case turned entirely on circumstantial evidence—that is, if the jury did not think the incriminating statements had been voluntarily made or did not believe them. The corpus delicti was proven, indeed conceded, and if the jury believed the incriminating statements of Glaros that would have been enough to justify a finding of guilt, without reference to the circumstantial evidence. *Cooper v. State,* 220 Md. 183, *supra.* The requested instruction that the circumstances must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence, applies only when guilt is to be determined or based upon circumstantial evidence alone. *Vincent v. State,* 220 Md. 232, 236.

Here there was evidence apart from circumstantial evidence which would justify a guilty verdict and it would not have been proper to instruct as requested.

The court's charge as a whole fairly and adequately presented to the jury the necessity of finding from the evidence that Glaros was present at the scene of the robbery when it took place and participated therein, as opposed to the finding that he was playing cards in Baltimore at the time. We find no prejudicial error in the charge, or elsewhere in the record.

*Judgment affirmed.*