HACKETT *v.* STATE

[No. 427, September Term, 1963.]

*Decided July 9, 1964.*

The cause was argued before the entire Court.

*Harry A. Cole* for the appellant.

*Roger D. Redden, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney for Baltimore City,* and *Andrew J. Graham, Assistant State's Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was tried for murder, convicted by a jury of murder in the first degree without capital punishment, and

sentenced to life imprisonment. The sole question presented on appeal is whether the trial court erred in admitting into evidence two written statements in the nature of confessions implicating the appellant in the commission of the crime.

Shortly before 7 P.M. on Saturday, February 24, 1962, a ten-year old boy, Reginald Scherer, went on an errand to a grocery store operated by Sol Cohen at 2000 North Washington Street in Baltimore City. As he entered he saw Mr. Cohen lying on the floor in a pool of blood and a young man, later identified as Charles Hackett, scooping money out of the cash register. A few minutes later a police officer found Mr. Cohen lying on the floor, the cash register open, and change on the floor. It was shown that Mr. Cohen had been struck on the back of the head with a blunt instrument. Mr. Cohen was pronounced dead upon arrival at St. Joseph's Hospital at 7:15 P.M.

The police arrested the appellant, 21 years of age, on February 25, 1962. He was questioned at around 1:00 P.M. but denied all knowledge of the killing. He signed an exculpatory statement on Monday afternoon, which was offered in evidence without objection. But at about 9:00 P.M. of the same day, after being confronted by another defendant, Daugherty, who had implicated the appellant in a signed statement shown to Hackett, Hackett told the police he was ready to give a statement. Hackett ate a meal before the statement was taken. The officers having Hackett in charge testified there were no threats or promises made, no offers or inducements, and there was no violence or coercion. Cf. *Bagley v. State*, 232 Md. 86. After this second statement was made Hackett read it and signed it. The statement was not read to him. In it Hackett admitted the robbery, and that he knocked Mr. Cohen down in getting away. He also admitted taking a wallet from under the cash register and subsequently giving it to Daugherty. He denied striking Mr. Cohen in the head. When the police the next day showed him the wallet recovered from Daugherty, Hackett identified it and signed a third supplementary statement in regard to it.

The case turns on Hackett's contentions that the latter two statements were coerced, in that he was beaten and threatened, and that he could not read. We need not discuss the first point

at any length. The police officers categorically denied the use of any force or threats whatever. Judge Oppenheimer's finding that the confessions were voluntary was supported by the evidence. Cf. *Abbott v. State,* 231 Md. 462, 464, and *Bean v. State,* 234 Md. 432. The argument that Hackett could not read, and hence did not know what he was signing, finds support in the testimony of Dr. Hamilton, Clinical Director at Perkins State Hospital. Dr. Hamilton stated that he had examined the accused a few months before the trial (in connection with pleas of insanity subsequently withdrawn) and was of the opinion that he could not read. He stated that the accused was of average intelligence, I.Q. 96, and had attained a sixth grade school level. He admitted that it was possible that the accused was malingering, and that his inability to read was feigned. In this connection it may be noted that in the first statement, admitted without objection because it was exculpatory, Hackett stated that he went through the ninth grade at school, and that he could read and write "a little." According to Lieutenant Eaton, Hackett made a correction in the second statement, scratching out the words "in an alley" and initialing the change. Unquestionably, Hackett was able to sign the statements, in a clear hand. There is no claim that Hackett's version of what happened was not correctly transcribed by the officer who did the typing. At no time did the accused inform the officers that he was unable to read, or ask that any of the statements be read to him. On the record we cannot say that Judge Oppenheimer was clearly wrong in finding that the statements were in fact read by the accused. We find no error in his ruling that the evidence was admissible for the consideration of the jury. Cf. *Grammer v. State,* 203 Md. 200, 218.

*Judgment affirmed.*