## WELLS *v.* STATE

[No. 22, September Term, 1964.]

*Decided October 22, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Leonard J. Kerpelman* for the appellant.

R. *Randolph Victor, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *Stanley S. Cohen, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

In this prosecution for a violation of the narcotic drugs statute, the principal questions on appeal relate to the legality of the arrest of the defendant (Ernest B. Wells), the legality of his punishment as a subsequent offender and the constitutionality of the sentence imposed on him as a multiple offender. Other questions concern the admissibility of an oral confession, the manner of its obtention, and its free and voluntary character. Still other questions involve the propriety of limiting the cross-examination of a state witness. Lastly, it is suggested that the evidence was insufficient to sustain the verdict of guilty.

On December 11, 1963, an officer of the narcotics squad received information from Charles Ridgely, an informer he had known for more than ten years, concerning the daily activities of the defendant with respect to the sale of heroin. The information given was to the effect that the defendant resided at 3611 Windsor Mill Road in a first floor rear apartment, that a telephone was listed in his name at that address, that every morning between 9:00 and 10:00 a.m. the defendant left his apartment to go to the home of his mother at 1720 Brunt Street, and that during these visits the defendant carried a supply of heroin in bundles bound with a rubber band. The officer had known the defendant before his arrest and knew that his mother resided on Brunt Street.

The next morning two officers of the narcotics squad placed the premises at 3611 Windsor Mill Road under surveillance. At about 10:00 a.m. they observed the defendant leave the house by the right rear steps and walk up the street toward the 3500 block where he was approached by the officers. Upon being asked where he was going, he stated he was going to his mother's house. And when he was asked if he was carrying any

narcotic drugs, he stated no. But a search of his pockets revealed a bundle of glassine bags wrapped in a rubber band, the contents of which were subsequently found to be heroin. After his arrest, the defendant was immediately taken to the narcotics squad office where, having acknowledged that his interrogator knew all about his selling activities, he frankly admitted dealing in narcotics.

At the trial, one of the arresting officers testified that no force or coercion was used by the police in questioning the defendant and that no threats or promises were made to him. The testimony also disclosed that the defendant refused to sign a written statement when asked to do so. Further testimony showed that the informer had given reliable information to the police on at least three former occasions. When the defendant took the stand in his own behalf he denied having made any oral statements to the officers, but admitted numerous prior convictions for larceny, assault, robbery and shoplifting.

### (i)

The defendant, citing *Aguilar v. Texas,* 378 U. S. 108 (1964), contends that his arrest, and the search and seizure incident thereto, were illegal because the arrest was based on a mere conclusion that he possessed narcotics. We do not agree.

In the case at bar, as in *Murray v. State,* 236 Md. 375, 204 A. 2d 908 (1964), we are confronted with the problem of what constitutes probable cause for arrest and a coincidental search and seizure. We dealt at length with the question there and we see no reason to consider it further here. Although the facts of the two cases are somewhat different, we think that the facts in this case, as they did in *Murray,* warrant a finding that the officers had probable cause to believe a felony was being committed in their presence and were therefore justified in making the arrest and the subsequent search and seizure.

Here, where the information was received from a known reliable informer, it was accurate as to the residence of the defendant and as to his habit of leaving his apartment at a precise time to go to the home of his mother. These factors, together with the fact that the defendant was known to the officers as a previous narcotics violator, were sufficient to constitute probable cause for the arrest.

Although the defendant contends that the holding in *Aguilar* requires us to find that his arrest was unlawful, we find nothing therein remotely analogous to the situation here. On the contrary, that case is clearly distinguishable from this on the facts. In *Aguilar,* where a warrant was issued on an affidavit which merely stated that the officer had received reliable information from a credible person that narcotics were being kept on a certain premises, it was held that an affidavit that disclosed only an unidentified informant and that the information was based on suspicion or an opinion, without showing that the informant spoke with personal knowledge, was an insufficient showing of probable cause to justify the issuance of a warrant. Whether or not probable cause for arrest exists depends, of course, on the facts and circumstances in each case. When, however, the facts in *Aguilar* are compared with the circumstances here, it is apparent that the information the officers received in this case was such as only the informer would have known. See *Draper v. United States,* 358 U. S. 307 (1959), where the information received from an informer was quite similar to that given by the informer in this case.

(ii)

In essence the second contention of the defendant is that he could not be punished as a "subsequent offender" within the meaning of Code (1957), Art. 27, § 300, as amended by Ch. 772 of the Laws of 1963, because changing the grade of narcotic offenses from misdemeanors to felonies had the effect of making the multiple offender aspects of the law applicable only to previous "felony" violations. The third contention is that the sentencing of a person addicted to the use of narcotics (when he may be unable to resist using narcotics) is violative of the constitutional prohibitions against cruel and unusual punishment. Similar questions were presented and decided adversely to the defendant in *Murray v. State, supra,* and there is no reason to say any more here than what we said there other than to repeat that it is immaterial whether the prior convictions were for a misdemeanor or for a felony. Since the defendant in this case, according to the record, was a seller and not a user of narcotics, it can hardly be said that he was under compulsion to continue selling narcotics.

(iii)

The questions concerning the oral confession involve three separate contentions, one of which, the first—that the confession was the fruit of an illegal arrest—need not be considered since we have held that the arrest was lawful. The second contention is that the admission of the confession was a denial of due process in that the State was not required to meet its burden of proving voluntariness by showing some reason why a signed confession was not obtained. The third contention is that the defendant should have been allowed to show the pattern followed by the police in the obtention of oral rather than signed confessions in narcotics cases.

Having held the arrest of the defendant to have been lawful, we find that the confession was properly admitted in evidence. The cases make it clear that oral as well as written confessions, if freely and voluntarily given, are admissible as evidence. See, among others, *Cooper v. State,* 205 Md. 162, 106 A. 2d 129 (1954), *cert. den.* 348 U. S. 896 (1954) ; *Felkner v. State,* 218 Md. 300, 146 A. 2d 424 (1958) ; *Hall v. State,* 223 Md. 158, 162 A. 2d 751 (1960) ; *Glaros v. State,* 223 Md. 272, 164 A. 2d 461 (1960) ; *Bagley v. State,* 232 Md. 86, 192 A. 2d 53 (1963). And the fact that a confession is oral does not impose on the State an additional burden to prove its voluntary character. *Williams v. State,* 231 Md. 83, 188 A. 2d 543 (1963) ; *Gault v. State,* 231 Md. 78, 188 A. 2d 539 (1963). While the burden is on the State to prove the voluntary character of a confession, whether or not the confession should be admitted in evidence is a matter for the trial court to decide, and its finding will not be disturbed by this Court unless clearly erroneous. *Stewart v. State,* 235 Md. 210, 201 A. 2d 18 (1964) ; *Abbott v. State,* 231 Md. 462, 190 A. 2d 797 (1963).

We think the contention of the defendant that it was a denial of due process for the State to make a typewritten record of what the defendant had confessed without having him sign or initial it is without merit. The arresting officer testified that the confession was obtained without the use of threat, force, coercion or promise of any nature. The defendant offered no testimony to rebut the voluntariness of the confession other than his denial of having made it. On the basis of the evidence

before it, the trial court found that the confession was the free and voluntary act of the defendant and we find no error or abuse of discretion in such determination.

The fact that the narcotics squad may follow a practice of obtaining oral rather than written confessions is immaterial, and the court properly excluded such evidence. What the squad had done in other narcotic cases, since it had no bearing on the alleged involuntary character of the confession in this case, would be irrelevant. Moreover, evidence of the procedure employed in obtaining the confession in this case, in and of itself, without a showing that the confessor was thereby harmed or prejudiced, would not be sufficient to rule out the confession.

### (iv)

The contentions that it was error not to permit the defendant to cross-examine the police officer as to what the plea of the defendant had been at the preliminary hearing; as to the impressions of the defendant during the course of his interrogation by the police; as to whether the informer was a user of narcotics or had been convicted of using narcotics; and as to the substance of the information the informer had given to the police on prior occasions, are likewise without merit.

Taking them seriatim, the record shows that the trial court did not refuse to hear relevant testimony relating to the plea of the defendant at the police court hearing. On the contrary, the police officer testified that he did not recall how the defendant pleaded and that ended the matter.

The contention that it was error to limit cross-examination of the police officer concerning the defendant's impressions as to whether the officer was trying to help him or not when he was being questioned about his dealings in narcotics was likewise without merit. The objection of the State to that line of questioning, since it had no bearing on the free and voluntary character of the confession, was properly sustained.

Nor, as an examination of the record discloses, was it error for the trial court to limit the cross-examination of the police officer as to one of the aspects of the questions relating to the background of the informer and the substance of previously given information. Ordinarily, however, the cross-examination

of a police officer with respect to the reliability of information received on prior occasions from an informer should be allowed. As to the first aspect of the contention in this case, concerning the use of narcotics by the informer and his convictions for such use, it appears that it was not the informer who was testifying. The police officer had given the name and address of the informer in response to a question, but no demand was made for his appearance even though he was available, and the court, though it properly could have, did not permit the police officer to answer these questions. As to the second aspect of the contention, regarding the substance of previously given information, the record shows that while the defendant was at first denied the right to cross-examine the police officer on the point, the court subsequently allowed the officer, during the course of his cross-examination, to testify at some length concerning the reliability of information received by the arresting officers in the past and that such information had always resulted in a conviction. In circumstances such as are present here, the rulings of the lower court with respect to the reception and rejection of evidence on cross-examination are matters as to which the court has a sound discretion, and in the absence of an abuse thereof, the rulings will not be disturbed on appeal. See *Lloyd v. State,* 219 Md. 343, 149 A. 2d 369 (1959), *cert. den.* 359 U. S. 1014 (1959).

(v)

There was sufficient evidence before the trial court on which it could fairly be convinced beyond a reasonable doubt that the defendant was guilty as charged.

*Judgment affirmed.*